MICHAEL BARNES (State Bar No. 121314)
SONIA MARTIN (State Bar No. 191148)
MEGAN DUNHAM (State Bar No. 245991)
SONNENSCHEIN NATH & ROSENTHAL LLP
2121 N. California Blvd., Suite 800
Walnut Creek, California 94596
Telephone: (925) 949-2600
Facsimile: (925) 949-2610
Email: mbarnes@sonnenschein.com
smartin@sonnenschein.com
mdunham@sonnenschein.com

Attorneys for Plaintiff
ALLSTATE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, an Illinois Corporation,<br><br>        Plaintiff,<br><br>    vs.<br><br>MARILYN MADDEN,<br><br>        Defendant. | Case No. C08 03487 HRL<br><br>**FIRST AMENDED** COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT |

Plaintiff Allstate Insurance Company (hereinafter "Allstate") alleges as follows:

**JURISDICTION AND VENUE**

1.   Allstate brings this declaratory judgment action under 28 U.S.C. section 2201 and Federal Rule of Civil Procedure 57. This Court has diversity jurisdiction over this matter under 28 U.S.C. section 1332, as is more specifically alleged below, in which the amount in controversy, exclusive of interest and costs, exceeds $75,000. Because the claims at issue arose in the County of Santa Cruz, California, venue is proper in this Court pursuant to 28 U.S.C. section 1391.

**INTRADISTRICT ASSIGNMENT**

2.   The events at issue in this case arose in the County of Santa Cruz. Accordingly, the action should be assigned to the San Jose Division as set forth in Civil L.R. 3-2(e).

**PARTIES**

3.   Plaintiff Allstate is an Illinois corporation with its principal place of business in Northbrook, Illinois. At all times relevant to this action, plaintiff has been a resident and citizen of the State of Illinois.

4.   Defendant Marilyn Madden is, and at all relevant times was, a resident of the Northern District of California and a citizen of the State of California.

**THE POLICY**

5.   On January 31, 2007, Allstate insured Ms. Madden as the named insured under Deluxe Homeowners Policy number 0 67 083575 (the "Policy"). The Policy insured the property at 906 Windsor Street in Santa Cruz, California, and provided structure coverage with a stated limit of $225,238 and personal property coverage of $168,928. The pertinent terms of the Policy are set forth infra at paragraphs 16 through 20.

**THE UNDERLYING CLAIMS**

6.   On or about January 31, 2007, Ms. Madden filed a claim with Allstate, which was assigned claim number 0100738772 (the "First Claim"). In her First Claim, Ms. Madden sought coverage for property damage sustained in a fire at her home located at 906 Windsor Street in Santa Cruz.

7.   In response to Ms. Madden's First Claim, Allstate agreed to pay for physical damage to her home's structure and personal property caused by the fire, subject to the terms and conditions set forth in the Policy.

8.   Following the fire, Ms. Madden hired Steamatic Total Cleaning and Restoration to remove smoke damage from her home. Ms. Madden subsequently informed Allstate that Steamatic contaminated her home with chemicals during the cleaning process and that the alleged chemicals were adversely affecting her health and preventing her from returning to her home.

9.   Allstate thereafter paid for another restoration company to clean Ms. Madden's home. An industrial hygienist of Ms. Madden's choosing subsequently determined Ms. Madden's home was habitable.

CASE NO. C08 03487 HRL                -2-   **FIRST AMENDED** COMPLAINT FOR DECLARATORY
                                                  DECLARATORY RELIEF AND REIMBURSEMENT

10. Allstate paid a full year of additional living expenses on Ms. Madden's First Claim, the maximum amount allowable under the policy.

11. Ms. Madden, however, has told Allstate that her home is still uninhabitable and alleges she will become homeless if Allstate refuses to continue paying additional living expenses beyond twelve months.

12. Ms. Madden also has informed Allstate that she believes it is required to pay to further clean and repair the alleged contamination by Steamatic.

13. On or about January 29, 2008, Ms. Madden tendered a second claim to Allstate, which was assigned claim number 0107106924 (the "Second Claim"), seeking coverage for the alleged damage caused by Steamatic.

14. Allstate has paid and continues to pay Ms. Madden's additional living expenses under the Second Claim, subject to a reservation of rights to dispute whether it owes such amounts and to seek reimbursement of them from Ms. Madden.

## FIRST CLAIM FOR RELIEF:

## DECLARATORY RELIEF

15. Allstate hereby realleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 14 above as though fully set forth herein.

16. The relevant insuring clause of the Policy's dwelling coverage provides as follows:

*Losses We Cover Under Coverage A:*

**We** will cover sudden and accidental direct physical loss to property described in **Coverage A- Dwelling Protection and Coverage B- Other Structures Protection**, except as limited or excluded in this policy.

17. The relevant insuring clause of the Policy's personal property coverage provides in pertinent part as follows:

*Losses We Cover Under Coverage C:*

**We** will cover sudden and accidental direct physical loss to the property described in **Coverage C—Personal Property Protection**, except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail .. .

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke ...

8. Vandalism and Malicious Mischief ...

9. Falling objects ...

10. Weight of ice, snow or sleet which causes damage to personal property in a building structure, but only if the building structure is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

   **We** do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance .. .

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police .. .

CASE NO. C08 03487 HRL -4- **FIRST AMENDED** COMPLAINT FOR DECLARATORY DECLARATORY RELIEF AND REIMBURSEMENT

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any building structure on the residence premises. This does not include damage to the glass.

18. The Policy contains the following provision under the heading *"Additional Protection"* in relevant part:

**1.  Additional Living Expense**

    a. **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

    Payment for covered additional living expenses will be limited to the least of the following:

    1. the time period required to repair or replace the property **we** cover, using due diligence and dispatch; or

    2. if **you** permanently relocate, the shortest time for **your** household to settle elsewhere;

    3. 12 months.

19. The Policy also contains the following exclusions under the heading "*Losses We Do Not Cover Under Coverage A*":

**We** do not cover loss to the property described in **Coverage A- Dwelling Protection** or **Coverage B - Other Structures Protection** consisting of or caused by:

\*   \*   \*

14. Vapors, fumes, acids, toxic chemicals, toxic gases, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

\*   \*   \*

22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

    a) planning, zoning, development, surveying, siting;

CASE NO. C08 03487 HRL     -5-  **FIRST AMENDED** COMPLAINT FOR DECLARATORY DECLARATORY RELIEF AND REIMBURSEMENT

        b)      design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        c)      materials used in repair, construction, renovation or remodeling; or

        d)      maintenance;

of property whether on or off the residence premises by any person or organization.

20. The Policy also contains the following exclusions under the heading "***Losses We Do Not Cover Under Coverage C***":

**We** do not cover loss to the property described in **Coverage C-- Personal Property Protection** caused by or consisting of:

11.    Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

14.    Planning, Construction or Maintenance, meaning faulty, inadequate or defective:

        a)      planning, zoning, development, surveying, siting;
        b)      design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        c)      materials used in repair, construction, renovation or remodeling; or
        d)      maintenance of property whether on or off the **residence premises** by any person or organization.

21. As a result of the policy language set forth above, Allstate contends that Ms. Madden's Second Claim is not covered under the Policy because: (1) Ms. Madden's home and personal property have been adequately remediated and repaired as part of the First Claim; (2) Steamatic did not damage Ms. Madden's home or personal property; (3) the alleged damage caused by Steamatic to Ms. Madden's home and personal property did not result from a "sudden and accidental direct physical loss"; (4) the alleged personal property damage did not result from an enumerated specified peril covered under the Policy; (5) the alleged damage is excluded under the Policy, and/or (6) the claim is not covered for other contractual or legal reasons.

CASE NO. C08 03487 HRL      -6-  **FIRST AMENDED** COMPLAINT FOR DECLARATORY DECLARATORY RELIEF AND REIMBURSEMENT

22. Even if this Court determines Ms. Madden's Second Claim is covered by the Policy, Allstate contends it has paid sufficient Policy benefits to repair and/or replace Ms. Madden's damaged property and that it owes no further benefits under its Policy.

23. By reason of the foregoing, there now exists an actual, justiciable controversy between the parties hereto within the meaning of 28 U.S.C. section 2201, in that Allstate contends Ms. Madden's Second Claim is not covered by its Policy, whereas Allstate is informed and believes that Ms. Madden contends that it is. In the alternative, Allstate contends that even if Ms. Madden's Second Claim is covered by the Policy, Allstate has paid an amount sufficient to restore her property to its pre-loss condition, whereas Allstate is informed and believes Ms. Madden contends it has not. This Court is vested with the power to declare and adjudicate the respective rights, duties and obligations of the parties hereto with respect to the issues raised by this Claim For Declaratory Relief.

## SECOND CAUSE OF ACTION

## REIMBURSEMENT OF ADDITIONAL LIVING EXPENSES

24. Allstate hereby realleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 23 above as though fully set forth herein.

25. Because Allstate has and had no duty under its Policy to pay Ms. Madden's additional living expenses in connection with the Second Claim, Allstate is entitled to reimbursement of such amounts paid under the Second Claim.

26. In the alternative, to the extent the Court determines Allstate has a duty to pay Ms. Madden's additional living expenses in connection with the Second Claim, Allstate is entitled to reimbursement of all such amounts incurred beyond the date by which Ms. Madden could have restored her home to its pre-loss condition, using due diligence and dispatch.

WHEREFORE, Allstate prays as follows:

1. For a judgment declaring that defendant's Second Claim is not covered under the Policy or that no monies are due thereon;

2. For a judgment declaring Allstate is entitled to reimbursement from defendant of all additional living expenses paid on her behalf in connection with the Second Claim;

1    3.    In the alternative, for a declaration of the parties' respective rights, duties and
2 obligations under the Policy with respect to the Second Claim;
3    4.    For its costs incurred herein; and
4    5.    For such other and further relief as the Court may deem just and proper.

Dated:  July 28, 2008                                 Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP


By: _____*/s/Sonia Martin*_____
             Sonia Martin

Attorney for Plaintiff
ALLSTATE INSURANCE COMPANY

27304089

CASE NO. C08 03487 HRL                 -8-  **FIRST** **AMENDED** COMPLAINT FOR DECLARATORY
                                            DECLARATORY RELIEF AND REIMBURSEMENT